# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### EASTERN DIVISION

JOHN A CARLSON                                )
                                              )
    Plaintiff,                         )
                                              )
vs.                                           )
                                              )   Case No: 1:10-CV-003-VEH
SPECIAL PROGRAMMING FOR                       )
ACHIEVEMENT NETWORK OF THE                    )
ALABAMA DEPARTMENT OF                         )
DEPARTMENT OF YOUTH                           )
SERVICES, et al,                              )
                                              )
    Defendants.                        )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT THEREOF

Michael E. Meyer
State of Alabama Department of
Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36075
Telephone: 334-215-3803
Fax: 334-215-3872
michael.meyer@dys.alabama.gov

Attorney for Alabama Department of Youth Services and Special
Programming for Achievement Network

# TABLE OF CONTENTS

## TABLE OF EXHIBITS

| PAGE | | EXHIBIT |
|---|---|---|
| 2, 7 | Document 42 - Plaintiff's Third Amended Complaint | 1 |
| 3, 4, 10, 11, 13, 14, 16, 19 | 3/30/11 Deposition of Stephen B. Franks with Exhibits | 2 |
| 2, 3, 4, 5, 6, 13, 14, 15, 19 | 5/9/11 Deposition of Barbara Creel with Exhibits | 3 |
| 3, 4, 5, 8, 9, 12, 15, 17, 18 | 2/22/11 Deposition of John A. Carlson, Sr. with Exhibits | 4 |
| 5, 6, 7, 8, 9, 11, 18 | 4/4/11 Deposition of Edward Roscoe Lane with Exhibits | 5 |
| 5, 6, 7, 8, 10 | 5/9/11 Deposition of Shon Holton with Exhibits | 6 |
| 9 | 4/8/11 Deposition of Betty Gail Tidwell | 7 |
| 13-14, 17, 18, 19 | 6/1/11 Deposition of James Walter Wood, Jr. with Exhibits | 8 |
| 14 | Plaintiff's Bates Stamp 000286 - 000288 12/31/2008; 7/31/2009; 3/31/2010 Earnings Statement | 9 |
| 15, 16 | DYS First Set of Interrogatories, First Request For Production of Documents, and First Request | 10 |

i

For Admissions - Filed 5/19/2010.   Plaintiff's
Responses to discovery - filed 7/9/2010

16          4/5/2011 Letter to Mr. Kenneth Haynes, Attorney          11
            for the Plaintiff, From Mr. Michael E. Meyer,
            Attorney  for DYS and SPAN,  attaching Bates
            Stamp DYS 000776 - 000884

17          John A. Carlson v. C.I.T.Y. Programs of Ala.             12
            EEOC Charge Number 420-2008-03543
            Bates Stamp DPE 000835 - DPE 000840

19          Excerpts of Reports on the C.I.T.Y. (Community           13
            Intensive Treatment of Youth) Skills
            Training Consortium - October 1, 2007
            Through September 30, 2008 (DPE 001658 &
            DPE −001671) filed August 28, 2009 and
            October 1, 2008 through  September 30, 2009
            (DPE-001692 & DPE-001706) filed
             February 5, 2010.

## TABLE OF AUTHORITIES                              **PAGE**

Alexander v. Fulton Co., Ga.
207 F.3d 1303, 1332 (11th Cir. 2000)                    25

Birmingham Post Co. v. Sturgeon
227 Ala 162 (1933)                                          26

Board of Trustees of the University of Alabama
v. Garrett
121 S. Ct. 955, 960, 962, 968 (2001)                       21, 22

Clark v. Coats & Clark, Inc.
929 F.2D 604,608 (11th Cir. 1991)            19

Celotex Corp. v. Catrett
477 U.S. 317 (1986)            19

D'Angelo v. ConAgra Foods, Inc.
422 F. 3d 1220, 1229-30, 1243 (11th Cir. 2005)      27, 28

Ex Parte Young
209 U.S. 123 (1908)            22

Gamble v. Aramark Uniform Services
132 Fed. Appx. 263 (11th Cir. 2005)      28

Gossett v. Twin Co., Inc.
594 So.2d 326, 635, 639 (Ala. 1992)      26

Lathan Roof American, Inc. v. Hairston
828 So.2d 262 (Ala. 2002)      25

Lofton v. Secretary of Dept. Of Children and
Family Services
358 F.3d 804, 809 (11th Cir. 2004)      20

Miller v. King
384 F.3d 1248, 1264 (11th Cir. 2004)      23

Puerto Rico Aqueduct v. Metcalf & Eddy
506 U.S. 139, 146 (1993)      23

Tipton v. Bergrohr GMBH-Siegen
965 F.2d 994, 999 (11th Cir. 1992)      20

Reed v. Heil Co.
206 F.3d 1055, 1061 (11th Cir. 2000)      25

<u>Rizo v. State of Alabama Department of Human</u>
<u>Resources</u>
228 Fed.Appx.832, 835 (11th Cir. 2007)                    24, 25

<u>South Alabama Skills Training Consortium v. Ford</u>
997 So.2d 309, 325 (Ala. 2008)                              26

<u>Sutton v. Lader</u>
185 F.3d 1203, 1207 (11th Cir. 1999)                      27

<u>Wascura v. City of South Miami</u>
257 F.3d 1238, 1242 (11th Cir. 2001)                      27

<u>Weston-Brown v. Bank of America Corp.</u>
167 Fed. Appx. 263 (11th Cir. 2005)                       28

<u>White v. Georgia Department of Motor Vehicle Safety</u>
2006 WL 89856 (N.D. Ga)                                     21

<u>Wilkerson v. Grinnell Corp.</u>
270 F.3d 1314, 1317 (11th Cir. 2001)                      25

<u>Wilson v. B/E Aerospace, Inc.</u>
376 F.3d 1079 (11th Cir. 2004)                            20

**RULES**                                                   **PAGE**

Alabama Rules of Civil Procedure, Rule 56 (c)               1, 19

## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE NORTHERN DISTRICT OF ALABAMA,
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN A CARLSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No: 1:10-CV-003-VEH |
| SPECIAL PROGRAMMING FOR | ) | |
| ACHIEVEMENT NETWORK OF THE | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| DEPARTMENT OF YOUTH | ) | |
| SERVICES, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT THEREOF

COMES NOW the Alabama Department of Youth Services ("DYS") and

Special Programming for Achievement Network ("SPAN"), by and through

counsel, and hereby moves for summary judgment on all claims in this case.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, there exists no

genuine as to any material fact and, therefore, DYS and SPAN are entitled to

summary judgment as a matter of law.  DYS and SPAN submit the following

undisputed material facts, legal authorities, and evidentiary materials in support of

its Motion for Summary Judgment.

## STATEMENT OF THE CASE

1.  Plaintiff Carlson alleges in his Third Amended Complaint a violation of the American with Disabilities Act (ADA) and Rehabilitation Act of 1973 against four (4) co-defendants, pursuant to this Court's September 28, 2010 Order, as follows:  the Alabama Department of Postsecondary Education, the Alabama Department of Youth Services, Central Alabama Community College, and Special Programming for Achievement Network, and bases such upon his non-selection for an interim program coordinator position on or about August 2008.  (**Ex. 1**).

2.  Carlson further alleges that due to his disability, he was denied  this interim program coordinator position and seeks various forms of redress, including temporary and permanent injunctive relief and damages.  (**Ex. 1**).

## UNDISPUTED RELEVANT MATERIAL FACTS

**A.  Carlson's Employer was CACC  during time of non-selection for interim position.**

3.  The Community Intensive Treatment for Youth ("CITY") Skills Training Consortium operated eleven (11) programs throughout the State of Alabama.  **(DPE Bate Stamp 000550 and 000418-000420 to Ex. 3).**

4.  The CITY Consortium was  administered by and funded through Central Alabama Community College from the State of Alabama (hereafter referred to as

"CACC"). **(Ex. 2, P. 14, Lines 6-14; P. 15, Lines 14-21**). The CITY Program

continued as a separate legal entity until its elimination and dissolution on

September 30, 2009. **(Ex. 2, P. 14, Lines 18-23; P. 58, Lines 7-11); (Ex. 3, P. 16,**

**Lines 14-23; P. 46, Lines 14-20); (DPE Bate Stamp 000550 to Ex. 3); (Ex. 4, P.**

**75, Lines 12-18; P. 283, Lines 20-23; P. 284, Lines 1-4; P. 285, Lines 11-13; P.**

**288, Lines 1-12).**

    5.  Dr. Franks, President of CACC, testified that pursuant to an approved

Reduction in Force (RIF) plan, all CITY employees were terminated by his

authority and discretion on September 21, 2009. **(DPE Bate Stamp 000464-**

**000467 to Ex. 2); DPE Bate Stamp 000376 to Ex. 2); (Ex. 2, P. 14, Lines 6-23;**

**P. 15, Lines 1-10).**  Dr. Franks' termination included Lane, CITY Director, on or

about January 31, 2009. **(Ex. 2, P. 30, Lines 3-7; P. 31, Lines 12-19; Plaintiff's**

**Exhibit 99 to Ex. 2).**   Moreover, as an employer, CACC had the authority to

make hiring decisions, supervise, control, and make interim appointments. **(Ex. 2,**

**P. 17, Lines 7-17).**

    6.  Dr. Franks testified that his decision to terminate all CITY employees

was ultimately due to an approximate $2 million budgetary shortfall and that State

of Alabama resources and funding were not available to sustain the CITY

Consortium. **(DPE Bate Stamp 000464-000467 to Ex. 2); (Ex. 2,  P. 14, Lines**

14-21; P. 32, Lines 5-10; P. 43, Lines 13-23).** Dr. Franks conveyed that although

he possessed the authority to administer the CITY Program, including termination

of CITY employees, the State of Alabama ultimately eliminated the CITY

Program by ceasing all state funding and budget allocations.  Dr. Franks testified

that the State of Alabama legislative process, which he was not privy to or a

participant in, eliminated the CITY Program by removing all state sources of

funding.  **(Ex. 2, P. 44, Lines 10-16; P. 56, Lines 19-23; P. 57- P. 58; P. 59,

Lines 1-5).**

7.  Barbara Creel ("Creel"), Business Manager for CITY, also testified that

all CITY employees were terminated and funding ceased for the CITY Program.

**(Ex. 3, P. 17, Lines 2-6).**

**B.  Carlson previously resigned from the same interim position.**

8.  On or about March 1995, Carlson began his employment with CITY as a

physical education coordinator.  **(Ex. 4, P. 54, Lines 17-19; P. 65, Lines 20-23).**

Carlson left that position in less than one year to accept a promotion with CITY as

a counselor.  **(Ex. 4, P. 66, Lines 4-10).**  Carlson has maintained that position until

the present time including an approximate two (2) week interval as the CITY

Houston Co. Interim Program Coordinator during 2006.  **(Ex. 4, P. 66, Lines 11-

15; P. 67, Lines 2-4; P. 69, Lines 1-4).**

4

9.  On or about September 2006 or immediately thereafter, Dr. Joyce Suttle left as the Program Coordinator, Houston Co. CITY Program.  **(Ex. 5, P. 78, Lines 19-23; P. 79, Lines 1-15; P. 80, Lines 21-23; P. 81, Lines 1-5).**  Initially, Shon Holton (hereafter referenced as "Holton") was appointed as the Interim P.C. Holton's interim appointment lasted approximately forty-five (45) minutes. **(Ex. 6, P. 45, Lines 6-16;  Ex. 4, P. 43, Lines 18-23; P. 44, Lines 14-21).**

10.  Holton testified that his brief duration as Interim P.C. was because Carlson complained to CITY Management that he deserved to be appointed as Interim P.C. due to his longevity and seniority with the CITY Program which was less than one year longer than Holton's length of CITY service.  **(Ex. 6,  P. 21, Lines 11-12, 23; P. 22, Lines 1-2, 22-23; P. 47, Lines 5-17).**   Based upon these complaints, Holton was removed as Interim P.C. and Carlson was appointed as Interim.  **(Ex. 6, P.45, Lines 17-23; P. 46-47, Lines 1-17).**

11.  Carlson voluntarily resigned as Interim Program Coordinator for the Houston Co. CITY Program after only two (2) weeks service on or about September 2006. **(Ex. 3, P. 25, Lines 6-14); (Ex. 4, P. 44, Lines 11-23); (Ex. 5, P. 78, Lines 19-23; P. 79, Lines 1-14; P. 80, Lines 21-23; P. 81, Lines 1-5); (Ex. 4, P. 68, Lines 15-23; P. 69, Lines 1-12); (Ex. 5, P. 81, Lines 6-23; P. 82, Lines 1-2, 9-23; P. 86, Lines 7-14; P. 87, Lines 16-21).**   According to testimony, Carlson

relinquished his duties and responsibilities as Interim P.C. because of related

factors, including: (1) position duties, (2) personality conflicts with staff and

CITY colleagues, and (3) time and workload requirements as Interim P.C. with no

increase in pay or benefits. **(Ex. 5, P. 88, Lines 1-22; P. 90, Lines 1-18; P. 114,**

**Lines 21-23; P. 115, Lines1-4); (Ex. 3, P. 25, Lines 15-21); (Ex. 6, P. 51, Lines**

**1-19; P. 70, Lines 9-23).**

    12.  Following Carlson's resignation as Interim P.C., Christina Johnson

("Johnson") was asked to serve as Interim P.C. on or about September 2006. **(Ex.**

**6, P. 53, Lines 5-13).**  She continued to serve as Interim for approximately one (1)

year. **(Ex. 6, P. 55, Lines 16-19).**  Edward Lane ("Lane"), CITY Consortium

Executive Director, testified that an interim selection does not require a formal job

announcement, posting, or interview process although he customarily sought and

relied upon his three (3) CITY Regional Coordinators, Lester Crowder, Larry

Palmer, and Carol Dotson (hereafter referenced as "Dotson"). **(Ex. 5, P. 82, Lines**

**22-23; P. 119, Lines 12-15).**  All three Regional Coordinators recommended to

Lane that he select Johnson as Interim P.C. upon which advice and

recommendation he followed. **(Ex. 5, P. 88, Lines 20-23; P. 89, Lines 1-14).**

    13.  On or about August 2007, Johnson was appointed as the Permanent

P.C. for the Houston Co. CITY Program following a formal interview and

selection process. **(Ex. 6, P. 60, Lines 5-12; P. 55, Lines 20-23; P. 56, Lines 1-8); (Ex. 5, P. 105, Lines 6-15).**

14. Johnson served as the Permanent P.C. for CITY, Houston Co., until on or about August 19, 2008 when she formally resigned in order to accept a full-time administrative position with the Dothan City School System. **(Ex. 5, P. 111, Lines 1-14); (Ex. 6, P. 60, Lines 9-21).**

## C. Lane selected Holton for legitimate, non-discriminatory reasons assuming, arguendo, a prima facie case is present.

15. Lane and the Regional Coordinators decided to make another Interim P.C. selection. **(Ex. 5, P. 114, Lines 4-23; P. 115, Lines 1-13, 20-22).**

16. During and immediately following a visit and meetings by Dotson during August 2008 with the CITY staff at the Houston Co. Program, Holton was selected to serve as Interim P.C. **(DPE Bate Stamp 001120-001131 to Ex. 6).**

17. Carlson, as conveyed in his Third Amended Complaint, alleges that his non-selection was attributable to his alleged disability. **(Ex. 1).**

18. Multiple deponent testimony evidences that Holton's selection and appointment as Interim P.C. for the Houston Co. CITY Program was entirely based upon legitimate, non-discriminatory factors and not pre-textual in any manner whatsoever. **(Ex. 5, P. 114, Lines 4-16; P. 115, Lines 5-22; P. 82, Lines**

17-23); (Ex. 4, P. 27, Lines 4-18); (Ex. 6, P. 69, Lines 15-23; P. 70; P. 71, Lines 1-3).

19.   According to Lane, Holton's selection was based upon the recommendations and advice from his three (3) Regional Coordinators because Holton was the more experienced, better qualified CITY employee-candidate to serve as Interim P.C. **(Ex. 5,  P. 114, Lines 4-16;  P. 115, Lines 5-22; P. 82, Lines 17-23).**

20.   Conversely, Lane testified that Carlson's alleged physical ailments, health issues, or disability was not a factor or consideration in his selection of an Interim P.C. **(Ex. 5, P. 132, Lines 1-13; P. 133, Lines 2-10).**  Moreover, Lane also stated that a significant factor was that Carlson had previously served as Houston Co. Interim P.C. for a brief period but had voluntarily resigned and relinquished the job. **(Ex. 5, P. 86, Lines 10-14; P. 87, Lines 16-23; P. 88, Lines 1-22; P. 114, Lines 17-23; P. 115, Lines 1-13; P. 116, Lines 1-14; P. 131, Lines 14-22; P. 132, Lines 1-13).**  Lane elaborated that for an interim position, one of his primary considerations was appointing an individual willing to responsibly perform the position duties. **(Ex. 5, P. 188, Lines 20-23; P. 189, Lines 1-6; P. 190, Lines 1-8).**

21.   Carlson also testified that Tidwell contacted him on or about August

2008 proclaiming that the Houston Co. CITY interim P.C. vacancy was previously discussed and even decided in the witness room during the federal criminal prosecution of Sue Schmitz. **(Ex. 4, P. 83, Lines 19-23; P. 84, Lines 1-10; P. 103, Lines 17-23; P. 104, Lines 1-23; P. 105; P. 106, Lines 1-6; P. 125; P. 289, Lines 7-23; P. 290, Lines 1-5).** However, Tidwell testified that she never contacted Carlson regarding the Houston Co. Program interim vacancy. **(Ex. 7, P. 19, Lines 20-23; P. 20, Lines 1-11).** Carlson later admitted that the only CITY personnel allegedly present in the witness room at the Schmitz criminal trial was Tidwell, Justin Hancock, CITY Information and Technology Coordinator, and Eric Guttensohn, Montgomery Co. CITY Program Coordinator. **(Ex. 4, P. 289, Lines 21-23; P. 290, Lines 1-5).** Carlson admitted that although he believed the Houston Co. interim vacancy was decided during this witness room "meeting," he further testified that none of the personnel present---Tidwell, Hancock, or Guttensohn---had the authority or ability to make such a decision. **(Ex. 4, P. 289; P. 290; P. 291-294).** Lane also testified that he did not participate or have knowledge of any Schmitz "witness room" meeting or discussion. **(Ex. 5, P. 146, Lines 14-23; P. 147, Lines 1-8).**

### D. CACC terminated Carlson and all other CITY employees.

22. Holton remained as the Houston Co. Interim P.C. from on or about

August 2008 until the CITY Program's elimination on September 30, 2009. **(Ex. 6, P. 22, Lines 22-23; P. 23, Lines 1-4; P. 69, Lines 21-22; P. 82, Lines 15-23; P. 83, Lines 1-10).**

23.  The State of Alabama, by and through its Legislature, terminated the CITY Consortium by ending all state funding through the budget process.  There exists no other legislative or statutory cite to evidence the CITY Program elimination and dissolution. **(Ex. 2, P. 14, Lines 20-23; P. 15, Lines 1-10; P. 43, Lines 14-23; P. 44, Lines 10-12; P. 58, Lines 2-11).**

24.  Dr. Franks testified, pursuant to his authority and direction, that he implemented and administered the "2009 Reduction-In-Force Plan developed for the C.I.T.Y. Skills Training Consortium" as approved and directed by the Alabama State Board of Education on February 26, 2009.  The 2009 CITY Consortium RIF clearly and unequivocally states that the legislative appropriations for FY09 was $2 million less than FY08 which was prior to 9% proration.  Moreover, the RIF Plan also states that CITY funds are usually state funds granted through the legislative process. **(DPE 000464-000467 to Ex. 2).**

25.  Pursuant to this aforementioned mandated CITY RIF Plan, the drastic reduction in state legislative appropriated funds, and the general bleak economic forecast, Dr. Franks testified that his involvement with the CITY Program was

10

"eliminating the Program from our college." **(Ex. 2, P. 14, Lines 6-14).**

26. Dr. Franks' implementation and execution of the CITY RIF Plan began at the executive level and increasingly became more expansive throughout 2009 until the entire CITY Program was eliminated by the end of that fiscal year. **(Ex. 2, P. 29, Lines 11-21; P. 30, Lines 1-11; Plaintiff's Exhibit 99 to Exhibit 2; P. 59, Lines 1-5).**

27. On or about January 2009, Dr. Franks terminated Lane, as Executive Director, for budgetary factors. **(Ex. 2, P. 30, Lines 1-4; P. 31, Lines 12-23).** Dr. Franks stated that "the overall spending level couldn't be sustained and there had to be drastic action taken including reduction in force which was began with Mr. Lane and continued throughout the rest of that fiscal year and ending September 30, 2009." **(Ex. 2, P. 32, Lines 1-19).**

28. Lane testified that on or about January 31, 2009, 27 or 28 CITY employees, including himself, were terminated due to lack of funding. **(Ex. 5, P. 69, Lines 8-20; P. 100, Lines 6-23; P. 101, Lines 1-3; P. 110, Lines 14-18).** Moreover, Lane was informed by Dr. Price at Postsecondary following Johnson's resignation in August 2008 that this position would not be permanently filled due to the on-going financial budget crisis. **(Ex. 5, P. 128, Lines 10-23; P. 129; P. 130, Lines 1-20; P. 45, Lines 10, 20-23).**

29. The Plaintiff has also admitted that the CITY Program was eliminated on September 30, 2009 and this consortium was his employer at the time of his alleged discriminatory non-selection for Interim P.C. **(Ex. 4, P. 75, Lines 12-18; P. 281, Lines 3-23; P. 285, Lines 11-13).**

30. Carlson further testified that his termination with the CITY Program was conducted and authorized by Dr. Franks "effective at the close of business on September 30, 2009." **(Ex. 4, P. 287, Lines 16-23; P. 288, Lines 1-12).**

31. Carlson testified that his entire supervisory chain at the CITY Program during August 2008 was, as follows:

   (1)  Christina Johnson - Houston Co. CITY Program Coordinator
   (2)  Carol Dotson - CITY Program Regional Coordinator
   (3)  Edward Lane - CITY Director
   (4)  Dr. Franks - President, Central Alabama Community College
   **(Ex. 4, P. 281, Lines 3-23; P. 282, Lines 1-23;**
   **P. 283, Lines 1-2; P. 283, Lines 20-23; P. 284, Lines 1-4).**

Carlson's omission to name any personnel at either DYS or SPAN is, by implication, an admission that neither one at these entities were in his supervisory chain or his employer prior to September 30, 2009.

## E. The State of Alabama authorized the creation of a new entity, SPAN.

32. On or about October 1, 2009 and following thereafter, a separate and distinct legal entity was created, formed, and organized by the State of Alabama

12

Legislature with funding to be channeled through DYS with administrative oversight. **(Ex. 2, P. 14, Lines 18-23; P. 15, Lines 1-10; P. 32, Lines 17-19; P. 58; P. 59, Lines 1-5).  (Ex. 3, P. 16, Lines 14-23, P. 17, Lines 1-6, 12-23; P. 20, Lines 1-18; P. 21, Lines 1-21).**

33.  Virtually all testimonial and documentary submissions from several independent sources evidence the formation of SPAN following FY 2010 and that this entity was completely separate and distinct from any previous legal entity, including the CITY Program.  Although CITY's elimination and dissolution was effective on September 30, 2009, the acronym "CITY" was continued for a short period thereafter because the Legislature did not initially provide as such.

34.  Likewise, and analogous for illustrative purposes, the Alabama Department of Youth Services is completely separate and distinct from the Alabama Department of Postsecondary Education and CACC just like it is from every other state agency and department.

35.  J. Walter Wood, Jr. (hereafter referred to as "Wood"), Executive Director of DYS, testified that SPAN was created on or about October-November 2009 by the State of Alabama, by and through the legislative process, and principally using funding allocation and budgeting as the authoritative source and basis for its creation and administrative oversight.  **(Ex. 8, P.8, Lines 8-13; P. 12,**

13

Lines 6-16; P. 60, Lines 9-10, P. 63, Lines 17-20).  Wood testified that DYS was

not involved with CITY.  (Ex. 8, P. 12, Line 23; P. 13, Lines 1-2; P. 14, Lines

21-23; P. 15, Lines 1-7).  Wood also testified that SPAN had its own employees,

bank accounts, Federal ID number, payroll, and letterhead.  (Ex. 8, P. 16, Lines 8-

21; P. 19, Lines 16-23, P. 20, Lines 11-18; P. 21, Lines 13-23; P. 22, Lines 1-4).

36.  Creel testified that CITY was an independent program administered by

CACC.  CITY Program remained under CACC from 2001 until September 30,

2009 and explained that CITY ceased to exist at that time because legislators

funded a new program under DYS.  (Ex. 3, P. 16, Lines 14-23, P. 17, Lines 1-6,

12-23).

37.  Creel explained that all criteria indicative of independent entities was

present.  The CITY Program had its own Federal Identification Number, bank

accounts, insurance, and its employees received their pay on CITY printed and

referenced checks. On or about October 1, 2009 and thereafter SPAN had its own

Federal Number and that its employees receive their pay on SPAN referenced

checks.  (Ex. 3, P. 17, Lines 12-23; P. 18, Lines 1-9); (Ex. 9, CITY Payroll

Check/SPAN Payroll Check); (Ex. 3, P. 18, Lines 10-18; P. 19, Lines 4-15).

Dr. Franks testified to the same.  (Ex. 2, P. 34, Lines 20-23).

38.  Creel stated that since October 1, 2009, she has reported directly to

14

Wood at DYS. Prior to this time frame, she reported to Dr. Franks and Lane when she was employed by CITY. **(Ex. 3, P. 20, Lines 1-18; P. 21, Lines 1-21).**

39. Carlson himself has admitted and acknowledged, both through testimony and discovery responses, that the CITY Consortium under Alabama Postsecondary and SPAN administered by DYS, respectively, are two completely independent and distinct legal entities, programs, and, indeed, employers. **(Ex. 4, P. 75, Lines 12-23; P. 76, Lines 1-23; P. 285, Lines 11-13; P. 286, Lines 18-20; P. 287, Lines 16-23; P. 288, Lines 1-12).**

40. Carlson admitted that he was an employee of CITY from 1996 to September 30, 2009; that he became an employee of SPAN on or about October 1, 2009 and was not employed with SPAN prior to that date; that the SPAN program was created by the State of Alabama and placed under DYS with an effective date of October 1, 2009; that the CITY Program was terminated by the State of Alabama and ceased to operate later than September 30, 2009, and that SPAN, created and placed under DYS, by the State of Alabama, and the CITY Program, administered by the Alabama Department of Postsecondary Education were distinct and separate state programs, along with the remaining DYS discovery admission requests. **(Ex. 10).**

41. DYS served its " First Set of Interrogatories, First Request for

15

Production of Documents, and First Request for Admissions" on May 19, 2010.

Carlson's responses to these admissions have a signed certificate of service date of

July 1, 2010, although DYS stamped a received date of July 7, 2010 on these

responses. **(Ex. 10).**

42.  On July 2, 2010, DYS counsel sent correspondence with its

supplemental responses and acknowledged Carlson's affirmative admission

responses regarding the above described facts. **(Ex. 11).**

43.  Carlson has failed to present any evidentiary material demonstrating

that either DYS or SPAN was his employer at the time of his alleged

discrimination on or about August 2008.  Dr. Franks, pursuant to the State Board

of Education RIF Plan, had complete authority to terminate all CITY employees.

**(DPE Bate Stamp 000464 to Ex. 2).**  Dr. Franks did not possess the authority, and

stated as such in his testimony, to transfer the CITY program to another state

agency.  The termination of funding for CITY and its dissolution was a legislative

measure in which Dr. Franks did not participate.  **(Ex. 2, P. 14, Lines 20-23; P.**

**15, Lines 1-10; P. 57-P. 58; P. 59, Lines 1-5).**

> **F.  Carlson did not file EEOC Charge against DYS or SPAN, and
>     neither DYS nor SPAN discriminated against Carlson in any
>     manner whatsoever.**

44.  Carlson failed to file an EEOC Charge of Discrimination against DYS.

16

**(Ex. 4, P. 307, Lines 4-5).** Carlson also admitted failure to file an EEOC Charge against SPAN because "SPAN wasn't in existence." **(Ex. 4, P. 307, Lines 7-9).** Carlson never filed an amended EEOC Charge against either DYS or SPAN.

45. Carlson admits that since DYS began administration of SPAN on October 1, 2009, no one from DYS has discriminated against him in any manner. **(Ex. 4, P. 301, Lines 3-6).**

46. Carlson also admits that his only EEOC Charge was filed on September 11, 2008 against the "CITY Programs of Alabama/Postsecondary Education". **(Ex. 12).** Carlson confirmed this when questioned whether he had ever filed an EEOC Complaint against either DYS or SPAN. **(Ex. 4, P. 307, Lines 4-5, 10-14).** Wood did not have knowledge of Carlson's EEOC Charge until after Carlson filed this lawsuit. **(Ex. 8, P. 38, Lines 21-23; P. 39, Line 1).**

47. Carlson admitted that since DYS' administration over SPAN on or about October 1, 2009, DYS has not announced or interviewed for a Program Coordinator position. **(Ex. 4, P. 309, Lines 11-17).** Carlson has not completed an application for a P.C. position. **(Ex. 4, P. 309, Lines 18-21).**

48. Wood testified that due to budgetary constraints, DYS has not announced or interviewed for any permanent positions of current job vacancies, including on-going interim positions, which include management and program

17

coordinator positions.  **(Ex. 8, P. 26, Lines 20-23; P. 27, Lines 1-4; P. 28, Lines 1-2, 16-23; P. 29, Lines 15-19; P. 30, Lines 3-8).**

49.  Although Wood is not interviewing or hiring to fulfill vacant or interim positions, Carlson testified that Wood "as a director, he can do what he wants" which includes  removing Holton, an African-American, as Interim P.C., and putting Carlson in the Interim P.C. position. **(Ex. 4, P. 305, Lines 7-23; P. 306, Lines 1-5).**

50.  Moreover, Carlson did not contact Wood about his grievance seeking redress until July 11, 2010 (seven months after filing suit and ten months subsequent to DYS administration for SPAN).  **(Ex. 8, P. 42, Lines 7-23; P. 43, Lines 1-18; P. 47, Lines 15-23; P. 48 , Lines 1-5).**

### G.  Absence of any adverse employment action or federal funding.

51.  No adverse employment action exists as Carlson's grievance pertains to an Interim P.C. position with no extra pay or benefits.  Lane testified several times that as an Interim P.C. there was absolutely no extra compensation, benefits or incentives but additional time and duty requirements.  **(Ex. 5, P. 89, Lines 5-14; P. 115, Lines 5-13; P. 119, Lines 12-23; P. 120, Lines 1-3).**

52.  The CITY Program did not receive any federal funding in FY 2008 (during time of alleged discrimination) or FY 2009 (CITY's last year in existence).

**(Ex. 13, Bate Stamp 000105-000138, Bate Stamp 000118 states: "C.I.T.Y. did not receive any federal funds."); (Ex. 13, Bate Stamp 000139, 000153); (Ex. 2, P. 44, Lines 10-17); (DPE Bate Stamp 000465 to Ex. 2); (Ex. 3, P. 51, Lines 18-23; P. 52, Lines 10-13).** Similarly, SPAN has never received federal funding. **(Ex. 8, P. 24, Lines 19-23; P. 25, Lines 1-10).**

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgement as a matter of law." Fed.R.Civ.P. 56 (c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

Once the moving party has satisfied its responsibility, the burden shifts to the nonmovant to show the existence of a genuine issue of material fact. *Id.* at 608. "If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment." *Id.* at 608 (quoting *Celotex Corp. V. Catrett,* 477 U.S. 317 (1986). "In reviewing whether the non-moving party has met its burden, the Court must stop short of weighing the evidence and making credibility

19

determinations of the truth of the matter.  Instead the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen,* 965 F.2d 994, 999 (11th Cir. 1992).  However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment.  *Lofton v. Secretary of Dept. Of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

Moreover, the Eleventh Circuit has expressly rejected the notion that summary judgment should seldom be used in employment discrimination cases because they involve issues of motivation and intent.  *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079 (11th Cir. 2004).

## ARGUMENT

### A. Incorporation by Reference

DYS and SPAN hereby adopts and incorporates by reference all factual and legal arguments of the co-defendants.

### B. Eleventh Amendment Constitutional Immunity

Summary judgement is due to be granted because DYS, as a state agency, is constitutionally immune from suit from Carlson's ADA and Rehabilitation Act claims.  Pursuant to the Eleventh Amendment of the United States Constitution,

20

nonconsenting states and its departments and agencies, are immune from money

damages by private individuals in federal court.  Specifically, the United States

Supreme Court has held that suits for money damages by employees of the State of

Alabama under Title I of the ADA are barred by the Eleventh Amendment. *Board*

*of Trustees of the University of Alabama v. Garrett,* 121 S.Ct. 955, 960, 962

(2001).

Carlson does not specifically allege a Title I violation of the ADA.

However, an analysis of the ADA does, by implication, necessitate that Carlson is

attempting to invoke an ADA violation under Title I, and not Title II or III.  The

ADA prohibits discrimination against disabled individuals in the areas of

employment (Title I), public services and activities (Title II), and public

accommodations (Title III).  The Court will initially analyze a Complaint to

ascertain the applicable ADA provision.  For example, when a Plaintiff alleged

employment termination due to a disability with the State of Georgia DMV, her

claims were governed by Title I and, by implication, not Title II or III.  *White v.*

*Georgia Department of Motor Vehicle Safety,* 2006 WL 89856 (N.D. Ga.).  Thus,

in this case, Carlson's claims are governed by Title I due to his allegations of a

non-selection for an interim coordinator position because of a disability.

There are three (3) permissible exceptions to a state agency's Eleventh

21

Amendment immunity: (1) Congressional Abrogation, (2) Consent, or (3) Waiver. None of these exceptions are applicable.

The United States Supreme Court held that "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and acts pursuant to a valid grant of constitutional authority." *Board of Trustees of the University of Alabama v. Garrett,* 121 S.Ct. 955, 962 (2001). Thus, Congress may subject nonconsenting states to suit in federal court when it does so pursuant to a valid exercise of its § 5 power under the Fourteenth Amendment. The Court then noted that the ADA can only apply to the States to the extent that the statute was appropriate § 5 legislation. *Id.* At 962. The Court held that Congress's purported abrogation of the States' Eleventh Amendment immunity from suits by private individuals under Title I of the ADA was invalid. *Id.* At 968.

The State of Alabama has not consented to be sued for money damages by Carlson and, therefore, DYS is entitled to summary judgment on that basis.

DYS is also constitutionally immune from Carlson's claims for all injunctive relief. Courts have recognized an exception to Eleventh Amendment immunity regarding prospective injunctive relief against state officials. *Ex Parte Young,* 209 U.S. 123 (1908). The Supreme Court reaffirmed the *Ex Parte Young* exception that a states' immunity from monetary damages did not preclude suits under Title I of

22

the ADA against state officials in their official capacities for injunctive relief. *Miller v. King,* 384 F.3d 1248, 1264 (11th Cir. 2004). However, this limited exception does not extend to prospective injunctive relief against states and their agencies. *Puerto Rico Aqueduct v. Metcalf & Eddy,* 506 U.S. 139, 146 (1993).

Carlson has failed to assert a claim for temporary or permanent injunctive relief against any individual state actor or official. Thus, in addition to Carlson's claim for money damages, DYS is also constitutionally immune from his claims for either permanent or temporary injunctive relief.

## C. **Failure to Exhaust Administrative Remedies**

Summary judgment is due to be granted in favor of both DYS and SPAN because Carlson failed to file or amend his EEOC Charge of Discrimination against either DYS or SPAN regarding an ADA, Rehabilitation Act, or any discrimination claims.

On September 11, 2008, Carlson filed his EEOC Charge against "CITY Programs of Alabama/Postsecondary Education" alleging employment discrimination transpiring on or about August 27, 2008. The undisputed material facts in this case repeatedly demonstrate that the CITY Program was eliminated and all CITY employees terminated by September 30, 2009.

On or about October 1, 2009, DYS was mandated by the State of Alabama

23

through its legislative process to administer a new legal entity which became

named and operated as the SPAN Program.  Carlson  received his Notice of Right

to Sue on or about October 6, 2009 and filed his lawsuit in this Court on January 4,

2010.  Undoubtedly, Carlson had ample time, notice, and opportunity from October

6, 2009, the date of his Notice of Right to Sue, and January 4, 2010, the date

Carlson filed his Complaint, to satisfy the mandatory statutory notice and

administrative exhaustion requirements against both DYS and SPAN.  Conversely,

neither DYS nor SPAN had notice of Carlson's filed EEOC Charge against CITY

and Postsecondary.  Wood testified that he was not aware of Carlson's filed 2008

EEOC Charge.

The Eleventh Circuit has consistently held that the EEOC notice and

exhaustion requirements are not optional, voluntary, or aspirational procedures.  To

the contrary, the Eleventh Circuit has proclaimed that "It is settled law that, under

the ADA, plaintiffs must comply with the same procedural requirements to sue as

exist under Title VII of the Civil Rights Act of 1964." *Rizo v. State of Alabama*

*Department of Human Resources,* 228 Fed.Appx. 832, 835 (11th Cir. 2007).

Furthermore, "In order to litigate a claim for discrimination under Title VII, the

ADA, or the ADEA, a plaintiff must first exhaust his administrative remedies,

beginning with the filing of a charge of discrimination with the EEOC." *Wilkerson*

24

*v. Grinnell Corp.,* 270 F.3d 1314, 1317 (11th Cir. 2001); *Rizo v. State of Alabama Department of Human Resources,* 228 Fed.Appx. 832, 835 (11th Cir. 2007). Failure to file a timely charge with the EEOC results in a bar of the claims contained in an untimely charge. *Alexander v. Fulton Co., Ga.,* 207 F.3d 1303, 1332 (11th Cir. 2000).

Carlson knew that the CITY Program had been eliminated and that DYS administered SPAN from October 1, 2009 and thereafter. Yet, he choose to ignore these mandatory EEOC notice and filing requirements, and DYS and SPAN are due summary judgment on these grounds.

D. **DYS and SPAN were Not Carlson's Employers and Carlson admits that neither DYS nor SPAN discriminated against him.**

Summary judgment is due to be granted to both DYS and SPAN because neither were Carlson's employer during the time of his alleged discrimination. An employment relationship is an essential element for ADA claims. *Reed v. Heil Co.,* 206 F.3d 1055, 1061 (11th Cir. 2000). The Alabama Supreme Court has identified several determinative factors to establish an employment relationship. In *Lathan Roof America, Inc. V. Hairston,* 828 So.2d 262 (Ala. 2002), the Court outlined the analysis and criteria, as the following:

> Several factors are relevant in determining whether an individual is an employee of another. Obviously, one of the most important factors is

25

whether there is evidence of an offer of employment and an acceptance of that offer. Another important factor is the degree of control the alleged employer retains over the alleged employee (citing *Gossett v. Twin Co., Inc.*, 594 So.2d 635, 639 (Ala. 1992). It is the reserved right of control rather than its actual exercise that furnishes the true test of whether the relation between the parties is that of an independent contractor or of employer and employee). Moreover, other factors include the method by which one receives payment, the furnishing of equipment, and whether one had the right to terminate the employment of the worker. *Id.* at 326.

Likewise, the Alabama Court of Appeals, similarly held that, "It has been long established that to be considered an employer, one must have the authority to select, control, and supervise the employee." *Birmingham Post Co. v. Sturgeon*, 227 Ala. 162 (1933). *South Alabama Skills Training Consortium v. Ford*, 997 So.2d 309, 325 (Ala. 2008).

An analysis of the undisputed material facts in this case with the employment criteria outlined above, including the pertinent time frame of alleged discriminatory acts and complete absence of selection, control, and supervision, along with all other indicia of employment, evidence that neither DYS nor SPAN were Carlson's employer when the Interim P.C. selection was made and, accordingly, any alleged discrimination is not attributable to either DYS or SPAN. In fact, Carlson admits that neither DYS nor SPAN have discriminated against him.

### E. **ADA and Rehabilitation Act Elements are Not Satisfied**

"The standard for determining liability under the Rehabilitation Act is the

same as that under the ADA." *Sutton v. Lader,* 185 F.3d 1203, 1207 (11th Cir.

1999). Thus, "in the absence of direct evidence of discrimination, a Plaintiff may

establish a prima facie case of a ADA violation through circumstantial evidence

using the familiar burden-shifting analysis employed in Title VII employment

discrimination cases." *Wascura v. City of South Miami,* 257 F.3d 1238, 1242 (11th

Cir. 2001).

A Plaintiff must demonstrate, under either ADA or Rehabilitation Act, that:

1. he has a disability;
2. he is a qualified individual, which is to say, able to perform the essential functions of the employment position that he holds or seeks with or without reasonable accommodations, and
3. his employer unlawfully discriminated against him because of the disability. *D'Angelo v. ConAgra Foods, Inc.,* 422 F.3d 1220, 1229-30 (11th Cir. 2005). Moreover, a plaintiff must demonstrate that his unlawful discrimination resulted in an adverse employment action. *Id.* at 1243.

Carlson fails to establish a prima facie ADA or Rehabilitation Act claim

because he is not disabled as defined therein. A disability is demonstrated by: (1) a

physical or mental impairment that substantially limits one or more of a major life

activity; (2) a record of such an impairment, or (3) was regarded as having such an

impairment. 42 U.S.C. § 12102(2); 29 U.S.C. § 705(9). A review of the facts in

this case demonstrate that Carlson's medical status and condition refute his

purported disability claim under both acts and, therefore, DYS and SPAN are

27

entitled to summary judgment on these grounds.

Carlson also fails to establish that his employer, CACC, unlawfully discriminated against him by an adverse employment action when he was non-selected for an Interim P.C. position. The Eleventh Circuit has held that temporary positions with no increased compensation, benefits, or title does not constitute an adverse action. *Weston-Brown v. Bank of America Corp.,* 167 Fed. Appx. 76 (11th Cir. 2006); *Gamble v. Aramark Uniform Services,* 132 Fed. Appx. 263 (11th Cir. 2005). As clearly established, CITY, by and through Lane, made an Interim P.C. appointment on or about August 2008. Lane stated several times that his selection was for an interim position with no extra pay or benefits. Creel testified that it was her understanding that Lane's appointment was for an Interim P.C. position. Holton testified that he has served as Interim P.C. which entails no extra pay or benefits. Thus, Carlson has not sustained any cognizable damage or injury.

Assuming, *arguendo*, that Carlson establishes a prima facie case, CACC can articulate legitimate, non-discriminatory reasons for the challenged adverse action. However, the employer's burden is merely one of production as it need not persuade the Court that it was actually motivated by the proffered reasons. *D'Angelo v. ConAgra Foods, Inc.,* at 1243. For example, Lane testified that he had the authority to make hiring, promotions and interim promotion decisions,

28

upon the advice and recommendations of CITY's 3 Regional Coordinators. Lane consistently testified that he based his selection of Holton because Holton was better qualified and that Carlson had previously served as the Houston Co. Interim P.C. but had voluntarily resigned after approximately 2 weeks. Both Creel and Holton testified substantially to the same.

Furthermore, Lane did not discuss or participate in the suspect and rather dubious "witness room" CITY administrative meeting during the Schmitz federal criminal prosecution in 2008 as alleged by Carlson. Carlson further testified that this was "where and when" CITY management made the pivotal interim appointment decision. However, Carlson was not present, denied knowing what executive CITY management was present, or even attempting to ascertain or follow through years after the occurrence because he was "upset." Carlson did admit that the three (3) individuals present –Tidwell, Hancock, and Guttensohn– lacked authority to make the decision on behalf of either CITY or CACC, and certainly not DYS or SPAN. Moreover, Tidwell emphatically denied any such topic or discussion occurring at the Schmitz criminal trial witness room.

Based upon the presented, consistent, and credible evidence in this matter, Carlson was not discriminated against due to any disability by CACC or CITY, and certainly not DYS or SPAN. In the alternative, the presented evidence

29

demonstrates that Lane's selection of Holton, and not Carlson, was based upon legitimate, non-discriminatory reasons and not pre-textual.

F. **Defendants Previous Asserted Defenses are Ripe**

The Court's March 25, 2010 Order noted that several of Defendants' asserted defenses were reserved in order for the parties to develop the record and engage in discovery. With all discovery completed and full record developed, DYS and SPAN reassert that these defenses – lack of subject matter jurisdiction and laches, along with failure to exhaust administrative remedies and non-receipt of federal funding, *supra*,– are fully applicable and summary judgment is due to be granted on these grounds.

## CONCLUSION

WHEREFORE, the above-cited and foregoing grounds considered, DYS and SPAN respectfully request that its Motion for Summary Judgment be granted.

Respectfully submitted this the 5th day of July, 2011.

Respectfully submitted,

LUTHER STRANGE
ATTORNEY GENERAL

30

s/ T. Dudley Perry, Jr.
T. Dudley Perry, Jr.
Bar Number: (PER-034)
General Counsel
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: dudley.perry@dys.alabama.gov


s/ Michael E. Meyer
Michael E. Meyer
Bar Number: (MEY-009)
Deputy General Counsel
Alabama Department of Youth Services
Post Office Box 66
Mt. Meigs, Alabama 36057
Telephone: (334) 215-3803
Fax: (334) 215-3872
E-Mail: michael.meyer@dys.alabama.gov

31

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of July 2011, I served the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF,** upon the Counsels of Record in the above-styled matter via electronically filling the forgoing document with the Clerk of the Court using the CM/ECF system which will provide electronic notification of said filing upon all counsel of record in the above-style matter, to-wit

Kenneth D. Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226

Kathryn Dickey
Law Offices of Kathryn Dickey, LLC
322 Alabama Street, Suite B
Montgomery, AL 36104

Mark T. Waggoner
Stephen N. Fitts
Hand Arendale, LLC
2001 Park Place Tower
Birmingham, AL 35203

s/ Michael E. Meyer
Deputy General Counsel