**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **JOHN A. CARLSON,** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| v. | )   **Case No.: 1:10-CV-3-VEH** |
| | ) |
| **CENTRAL ALABAMA** | ) |
| **COMMUNITY COLLEGE ,** | ) |
| | ) |
|    **Defendant.** | ) |

### MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Plaintiff John A. Carlson, Sr. ("Mr. Carlson") initiated this job discrimination lawsuit arising under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") on January 4, 2010. (Doc. 1). By virtue of an order of pro tanto dismissal (Doc. 73) entered on August 2, 2011, the defendants that remain in the lawsuit are Alabama Department of Post-Secondary Education ("DPE") and Central Alabama Community College ("CACC"). Pending before the court is the Motion for Summary Judgment (Doc. 61) (the "Motion") filed by DPE and CACC on July 5, 2011.  DPE and CACC filed all their supporting materials on this same date. (Docs. 62-63).

Mr. Carlson filed his brief (Doc. 64) in opposition to the Motion on July 26,

2011.  Mr. Carlson's opposing evidentiary submissions followed on July 26, 2011, (Doc. 66) and July 29, 2011.  (Docs. 71-72).

DPE and CACC filed their reply (Doc. 74) as well as a Motion to Strike and for Sanctions (Doc. 75) (the "Motion to Strike") on August 15, 2011.  On September 2, 2011, Mr. Carlson responded to the Motion to Strike (Doc. 77) and also filed a Motion for Leave to Substitute his declaration (Doc. 76) (the "Motion for Leave").

On September 9, 2011, DPE and CACC opposed (Doc. 78) Mr. Carlson's Motion for Leave and filed their reply (Doc. 79) in support of their Motion to Strike.  Mr. Carlson filed no reply brief in support of his Motion for Leave.  Accordingly, Defendants' Motion, Defendants' Motion to Strike, and Mr. Carlson's Motion for Leave are now all under submission.  For the reasons explained below, the Motion is **GRANTED IN PART** and otherwise is **DENIED**, the Motion to Strike is **GRANTED IN PART** (as modified by the court) and otherwise is **DENIED**, and the Motion for Leave is **GRANTED**.

## II. FACTUAL BACKGROUND[1]

In this suit, Mr. Carlson claims that CACC discriminated against him in violation of the Rehabilitation Act and the ADA by failing to promote him to an open interim position responsible for heading up the Dothan facility of the Community Intense Treatment for Youth ("CITY") Program, a project designed to help rehabilitate juvenile delinquent youth. More specifically, Mr. Carlson complains about a decision made in August 2008 to temporarily appoint his coworker and fellow counselor, Shon Holton ("Mr. Holton"), to the interim coordinator position for the CITY Program in Dothan. Mr. Carlson objects to this decision as an adverse employment action impermissibly taken by CACC on the basis of his disabled status.

The record contains substantial evidence from which a reasonable jury could conclude that Mr. Carlson was disabled at the time of the decision or at least

---

[1] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact. *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007). Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy. Finally, due to the nature of this court's decision on summary judgment, the foregoing statement of facts is significantly limited in scope.

perceived or regarded as such by CACC. The record also confirms that Mr. Holton was not disabled when CACC appointed him to the interim coordinator position over Mr. Carlson. The record additionally adequately establishes that becoming the interim coordinator for the CITY Dothan facility carried with it a certain level of prestige and a realistic opportunity to become the permanent coordinator (at least as of the time the interim decision was made by CACC in 2008).

The parties agree that Edward Lane ("Mr. Lane"), the director of the CITY Program, was the person responsible for temporarily placing Mr. Holton in the Dothan coordinator position. At issue in the Motion to Strike is certain evidence, attributable to Mr. Lane, which, based upon its preliminary assessment of the record, this court finds to be pivotal to the resolution of the Motion. More specifically, according to the declaration of Aneesha Thomas ("Ms. Thomas"), who was the office manager for the Dothan facility at the time of the decision-making process, when she, Mr. Holton, and Mr. Lane went into the program coordinator's office (when Mr. Lane came to visit the Dothan facility in or around August 2008), Mr. Lane said in her presence that "John[, *i.e.*, Mr. Carlson] was not going to [be] put in the position because of his disability." (Doc. 72-4 at 4 ¶ 7). As discussed more fully below, the court is not inclined to strike this evidence from the record as CACC requests, but will alternatively allow limited discovery and further factual development

4

surrounding this key (and other challenged) evidence.

### III.   STANDARDS

#### A.   Summary Judgment Generally

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'" *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

#### B.   Disability Discrimination

Regarding establishment of a *prima facie* case of disability discrimination under the ADA, the Eleventh Circuit has explained:

> The ADA mandates that employers shall not discriminate against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). <u>The familiar burden-shifting analysis of Title VII employment discrimination actions is equally applicable to ADA claims</u>. *See Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). Thus, Hilburn has the burden of proving a prima facie case of disability discrimination by a preponderance of the evidence, which requires a demonstration that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. 42 U.S.C. §§ 12112(a); *see Morisky v. Broward County,* 80 F.3d 445, 447-49 (11th Cir.1996). Having concluded that Hilburn had not established any genuine issue of a material fact relating to the first *prima facie* factor of disability, the trial court did not address the last two factors. *See Hilburn*, 17 F. Supp. 2d at 1383. Therefore, we will limit our discussion to whether Hilburn can be considered disabled within the meaning of the ADA.

The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Additionally, Hilburn must establish that Murata had actual or constructive knowledge of the disability or considered her to be disabled. *Morisky*, 80 F.3d at 448.

The ADA defines a "disability" as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual;

(B) a record of such impairment; or

(C) being regarded as having such impairment. 42 U.S.C. § 12102(2).

Hilburn must be deemed to be "disabled" for purposes of the ADA if she satisfies any one of these three definitions. However, a physical impairment alone is not necessarily a disability under the ADA.

> *Pritchard*, 92 F.3d at 1132. Commentary to the federal regulations contains a non-exclusive list of conditions that constitute a physical impairment. For the purposes of Hilburn's personal disability claim, it is significant that heart disease is included in this listing. 45 C.F.R. pt. 84, App. A., subpart (A)(3) (1997). Courts, including the Eleventh Circuit Court of Appeals (Eleventh Circuit), frequently look to EEOC regulations to assess the next analytical step of determining whether a physical impairment substantially limits a major life activity. *See, e.g., Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 911 (11th Cir. 1996).
>
> These regulations explain that the term "substantially limits" means "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997). Major life activities are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2( i ) (1997). With respect to the major life activity of working, the regulations explain that the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1997).

*Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226-27 (11th Cir. 1999)

(emphasis added) (footnote omitted).

## IV. ANALYSIS

### A. Mr. Carlson's Motion for Leave

In his Motion for Leave, Mr. Carlson seeks to substitute his declaration, attached as Doc. 76-1, for the version previously filed in by his counsel erroneously. (Doc. 76 ¶ 1). Mr. Carlson states that "[t]he substance of the affidavit has not been altered." (*Id.* at 1).

Defendants oppose Mr. Carlson's Motion for Leave because "the signed declaration, which was initially due on July 26, was not provided to the Court or defendants' counsel until more than a month later on September 2." (Doc. 78 ¶ 3). Defendants further point out that Mr. Carlson failed to "file[] his motion to substitute without first conferring with opposing counsel to determine whether the motion was opposed." (*Id.* ¶ 4).

The court finds the procedural failure of Mr. Carlson to inquire in advance of filing his Motion to Leave to be of no consequence as to do so would have been undoubtedly futile. The court also rejects the lateness of Mr. Carlson's filing as a basis for denying his Motion for Leave as Defendants had access to the contents of the declaration as early as July 29, 2011, and therefore cannot show - and indeed do not even assert - any harm to them from the substitution. Accordingly, the Motion for Leave is **GRANTED**, and Doc. 76-1 is **HEREBY SUBSTITUTED** for the

unsigned, but substantively identical, Doc. 72-5.

**B.    Defendants' Motion**

**1.    Law to Apply**

The parties are in agreement that "[t]he standard for showing discrimination under either the ADA or [the] Rehabilitation Act is the same." *See* (Doc. 61 at 17) (citing *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005)); (Doc. 64 at 14) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)); *see also Ellis*, 432 F.3d at 1326 ("The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ("ADA"); thus, cases involving the ADA are precedent for those involving the Rehabilitation Act.")). Additionally, both sides appear to be persuaded that the ADA Amendments Act of 2008 ("ADAAA") would not have any impact on the claims and defenses in this case.[2] More specifically, Defendants directly maintain that the

---

[2] The ADAAA provides in part that:

**(A)** The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter.

**(B)** The term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008.

**(C)** An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability.

ADAAA is in applicable to this lawsuit (Doc. 61 at 20 n.2), and Mr. Carlson does not contest this stance in his opposition.

---

> **(D)** An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active.
>
> **(E)(i)** The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures such as--
>
>> **(I)** medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
>>
>> **(II)** use of assistive technology;
>>
>> **(III)** reasonable accommodations or auxiliary aids or services; or
>>
>> **(IV)** learned behavioral or adaptive neurological modifications.

42 U.S.C. § 12102(4)(A)-(E)(i). Relatedly, the last stated purpose of the ADAAA calls for a broadening of the term "substantially limits":

> **(6)** to express Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term 'substantially limits' as 'significantly restricted' to be consistent with this Act, including the amendments made by this Act.

Pub. L. No. 110-325, 122 Stat. 3553, 3554 § 2(b)(6) (2008).

The record reflects that the accrual of Mr. Carlson's failure to promote claim occurred in August 2008. The ADAAA has an effective date of January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553, 3559 § 8 (2008). Based upon this court's independent research, it appears that the issue of any retroactive application relating to the ADAAA still remains an open question within the Eleventh Circuit. *See, e.g., Hollins v. Fulton Cnty.*, 422 Fed. App'x 828, 832 n.3 ("We have not addressed in a published opinion the issue of whether the ADAAA applies retroactively.").

This court has previously concluded that in the context of a plaintiff, such as Mr. Carlson, who seeks monetary damages for disability discrimination premised upon an adverse employment action that occurred prior to January 1, 2009, the ADAAA should not be applied retroactively. *See generally Richardson v. Honda Mfg. of Ala., LLC*, 635 F. Supp. 2d 1261, 1269-72 (N.D. Ala. 2009) (analyzing whether to apply ADAAA retroactively to challenged conduct pre-dating January 1, 2009). Relying upon *Richardson* as persuasive authority and in light of the fact that the parties present no arguments that the ADAAA plays a relevant role in this lawsuit, the court will analyze the Motion and Mr. Carlson's disability claims "applying the pre-amendment ADA laws[.]" *Hollins*, 422 Fed. App'x at 832 n.3.

### 2. Mr. Carlson's Claims Against DPE

In the Motion, Defendants have argued that summary judgment should be entered in DPE's favor because it was not Mr. Carlson's employer. Mr. Carlson has responded that "[i]n an effort to stream-line the Court's analysis of the important issues in this case, Plaintiff accepts CACC's concession that it was Plaintiff's employer." (Doc. 64 at 31). Additionally, Mr. Carlson did not offer any evidence to factually dispute Defendants' proof establishing the lack of an employment relationship between him and DPE. *Compare* (Doc. 61 at 16 ¶ 24) (citing to evidence establishing lack of employment relationship between Mr. Carlson and DPE), *with* (Doc. 64 at 7 ¶ 24) (agreeing with Defendants' factual contentions and evidence, but clarifying that "CITY Program's Director was working under the direction of [DPE]"). In light of this development, the Motion is **GRANTED** with respect to Mr. Carlson's claims against DPE because both sides have stipulated that CACC was Mr. Carlson's employer.

Alternatively, Mr. Carlson has abandoned any claims against DPE in electing not to oppose the contention that CACC was his only employer. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller Int'l, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding

unaddressed claim abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("We decline to exercise our discretion to entertain this argument which was not fairly presented to the district court."); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).

Relatedly, the court is under no independent obligation to develop grounds in opposition to summary judgment on behalf of Mr. Carlson as "the onus is upon the parties to formulate arguments[.]" *Dunmar*, 43 F.3d at 599; *see also id.* ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." (citing *Blue Cross & Blue*

*Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990)). Therefore, the Motion is **GRANTED** in favor of DPE for all these reasons, DPE is **HEREBY DISMISSED WITH PREJUDICE** as a party from this lawsuit, and CACC is the only defendant remaining in the case.

### 3. Mr. Carlson's ADA Claims

Mr. Carlson also has not opposed Defendants' Eleventh Amendment immunity defense against his ADA claims. Instead, Mr. Carlson responded that "Eleventh Amendment immunity does not apply to Rehabilitation Act claims[.]" (Doc. 64 at 30) (emphasis omitted). Additionally, Mr. Carlson has acknowledged that "the Eleventh Amendment bars private money damages for state violations of ADA Title I, which prohibits employment discrimination against the disabled." (Doc. 64 at 30) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 360, 121 S. Ct. 955, 960 (2001)).

Therefore, the Motion is **GRANTED** with respect to Mr. Carlson's ADA claims on the merits of the sovereign immunity defense. Alternatively, Mr. Carlson has abandoned pursuit of his ADA claims by only opposing the application of the Eleventh Amendment to his Rehabilitation Act claims.[3] Accordingly, all of Mr.

---

[3] The Supreme Court has described the Rehabilitation Act as having an "unambiguous waiver of the States' sovereign immunity." *Lane v. Pena*, 518 U.S. 187, 200, 116 S. Ct. 2092, 2100 (1996).

Carlson's ADA claims are **HEREBY DISMISSED WITH PREJUDICE**.

### C. Defendants' Motion to Strike

Defendants' Motion to Strike has multiple parts. The court addresses the Motion to Strike only as it pertains to the declarations of Ms. Thomas (executed on October 6, 2010) and Ms. Carol Dotson ("Ms. Dotson") (executed on February 22, 2011). Defendants largely complain that it is unfair for them not to have had the benefit of either witness's deposition as a result of Mr. Carlson's failure to make a timely disclosure of either declaration or a privilege log before the discovery period was over. *See* Fed. R. Civ. P. 26(e)(1)(A) (A party "must supplement or correct its disclosure or response:  in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]") (emphasis added); Fed. R. Civ. P. 26(5)(A)(i)-(ii) (A party withholding information on the basis of privilege "must: expressly make the claim; and describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.") (emphasis added).

---

Having studied the parties' divergent positions, the court finds that while Defendants could have been more proactive in their discovery dealings, *e.g.*, by filing a motion to compel against Mr. Carlson or noticing these witnesses' depositions as Defendants were generally aware of them (and their contact information) as well as the potential importance of their testimony <u>before the discovery period ended</u> on account of Mr. Carlson's deposition testimony, this still does not excuse Mr. Carlson's counsel's lack of forthcomingness and calculated decision to postpone the disclosure of this sworn-to evidence (or alternatively provide a privilege log as to the nature of such documents) until after the discovery period had closed.

Accordingly, in the court's discretion and weighing the competing interests, the appropriate relief to award to CACC is not to strike both declarations as requested, but rather to reopen discovery for a period of 60 days from the entry date of this order in order to allow it the opportunity to obtain the depositions of Ms. Thomas and Ms. Dotson and conduct any related discovery that reasonably flows from either deposition. Additionally, the court will permit CACC to file a second motion for summary judgment utilizing this new evidence within 90 days from the entry date of this order. Accordingly, Defendants' Motion to Strike is **GRANTED** as modified herein, and is otherwise **DENIED**.

## V. CONCLUSION

As a result of the above rulings, Mr. Carlson's case has been narrowed to a failure to promote claim asserted against CACC under the Rehabilitation Act. Further, in granting the Motion to Strike in part, the court has established a new dispositive motion deadline. Accordingly, the remaining pending portion of Defendants' Motion is **DENIED** as **MOOT**. Further, Defendants' Motion is **GRANTED IN PART** and otherwise is **DENIED**, Defendants' Motion to Strike is **GRANTED IN PART** and otherwise is **DENIED**, and Mr. Carlson's Motion for Leave is **GRANTED**.

**DONE** and **ORDERED** this the 7th day of November, 2011.

**VIRGINIA EMERSON HOPKINS**
United States District Judge