IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **JOHN A. CARLSON,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 1:10-CV-3-VEH |
| | ) |
| **CENTRAL ALABAMA** | ) |
| **COMMUNITY COLLEGE,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.   Brief Introduction

Plaintiff John A. Carlson, Sr. ("Mr. Carlson") initiated this job discrimination case arising under the Rehabilitation Act and the Americans with Disabilities Act ("ADA") on January 4, 2010. (Doc. 1). By virtue of several prior orders of dismissal (Docs. 73, 81), the only defendant that remains in the lawsuit is Central Alabama Community College ("CACC"), and the sole claim that remains is one of a failure to promote asserted pursuant to the Rehabilitation Act.

Pending before the court are CACC's Second Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 93) (the "Rule 56 Motion") filed on March 5, 2012; and (2) CACC's Motion To Strike or for Sanctions (Doc. 99) (the

"Strike Motion") filed on April 6, 2012.  The motions have been fully briefed (Docs. 94-96, 98, 101, 103), and on May 16, 2012, the court held a hearing to fully address the merits of the Rule 56 Motion and to ask any questions that it had regarding the Strike Motion.  (Doc. 97; Doc. 100 at 2).  For the reasons explained below, the Rule 56 Motion and the Strike Motion are **DENIED**.

### III.    Standard(s)

#### A.    Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

**B.     Evidentiary Rulings**

"All evidentiary decisions are reviewed under an abuse-of-discretion standard." *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 Fed. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court. Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a). "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore, even the existence of many evidentiary errors does not guarantee the party appealing a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

## III. Analysis

### A. Rule 56 Motion

#### 1. Mr. Carlson's Rehabilitation Act Disability Claim

In its Rule 56 Motion, CACC seeks to dismiss Mr. Carlson's Rehabilitation Act disability claim in its entirety. As this court has previously explained in its ruling made during this lawsuit's first dispositive motion stage:

> Mr. Carlson complains about a decision made in August 2008 to temporarily appoint his coworker and fellow counselor, Shon Holton ("Mr. Holton"), to the interim coordinator position for the CITY Program in Dothan. Mr. Carlson objects to this decision as an adverse employment action impermissibly taken by CACC on the basis of his disabled status.
>
> The record contains substantial evidence from which a reasonable jury could conclude that Mr. Carlson was disabled at the time of the decision or at least perceived or regarded as such by CACC. The record also confirms that Mr. Holton was not disabled when CACC appointed him to the interim coordinator position over Mr. Carlson. The record additionally adequately establishes that becoming the interim coordinator for the CITY Dothan facility carried with it a certain level of prestige and a realistic opportunity to become the permanent coordinator (at least as of the time the interim decision was made by CACC in 2008).
>
> The parties agree that Edward Lane ("Mr. Lane"), the director of the CITY Program, was the person responsible for temporarily placing Mr. Holton in the Dothan coordinator position. At issue in the Motion to Strike is certain evidence, attributable to Mr. Lane, which, based upon its preliminary assessment of the record, this court finds to be pivotal to the resolution of the Motion. More specifically, according to the declaration of Aneesha Thomas ("Ms. Thomas"), who was the office

> manager for the Dothan facility at the time of the decision-making process, when she, Mr. Holton, and Mr. Lane went into the program coordinator's office (when Mr. Lane came to visit the Dothan facility in or around August 2008), <u>Mr. Lane said in her presence that "John[, *i.e.*, Mr. Carlson] was not going to [be] put in the position because of his disability</u>." (Doc. 72-4 at 4 ¶ 7). As discussed more fully below, the court is not inclined to strike this evidence from the record as CACC requests, but will alternatively allow limited discovery and further factual development surrounding this key (and other challenged) evidence.

(Doc. 81 at 3-5 (emphasis added)).

Thus, the court already has determined that Mr. Carlson has established a *prima facie* case of disability discrimination under the Rehabilitation Act. The court also has indicated that the testimony from Ms. Thomas is key to Mr. Carlson's ability to show pretext on the part of CACC. *See MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991) (explaining that pretext is "evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions" (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041,1045 (11th Cir. 1998))) (internal quotation marks omitted).[1]

In reviewing the second Rule 56 Motion, CACC does not seek to strike Ms.

---

[1] Based upon Ms. Thomas's testimony, which attributes a discriminatory animus to Mr. Lane's decision to promote Mr. Holton over Mr. Carlson, Mr. Carlson, <u>at a minimum,</u> has established an a viable circumstantial evidence case of disability discrimination.

Thomas's testimony. Instead, the primary contention made by CACC is that the results of Ms. Thomas's deposition demonstrate that she is simply not a credible witness. Because, as Mr. Carlson points out, credibility determinations are appropriately within the province of the jury, the Rule 56 Motion is **DENIED** with respect to Mr. Carlson's Rehabilitation Act claim.

### 2. Partial Summary Judgment as to Damages

CACC also alternatively contends that it is entitled to partial summary judgment as to Mr. Carlson's "claims for damages or injunctive relief which post-date the September 2009 termination of the CITY Program." (Doc. 93 at 18). CACC's position is premised upon Mr. Carlson receipt of a "Notice of Intent to Terminate" from CACC on or around August 21, 2009. This notice indicates that Mr. Carlson's employment with CACC was scheduled to end on September 30, 2009, "[d]ue to a decrease in funding[.]" (*See* Doc. 62-1 at 94 ("The purpose of this correspondence is to notify you that it is my intention to terminate your employment with [CACC] effective September 30, 2009.")).

Mr. Carlson responds that September 30, 2009, is not the dispositive date for ending his damages period because the CITY Program, renamed the Special Programming for Achievement Network ("SPAN"), was subsequently transferred to the Alabama Department of Youth Services, and that he and his comparator, Mr.

Holton, retained their same positions, *i.e.*, counselor and interim coordinator, respectively, after this transfer occurred. (*See, e.g.*, Doc. 60-8 at 21 (letter dated August 21, 2009, to Mr. Carlson from J. Walter Wood, Jr. ("Mr. Wood"), indicating that "[t]he CITY program will come under the control of the Executive Director of the Alabama Department of Youth Services effective October 1, 2009" and informing Mr. Carlson that his "employment with the Alabama Department of Youth Services will begin effective October 1, 2009"); Doc. 60-8 at 37 (letter dated July 11, 2010, to Mr. Wood from Mr. Carslon, referencing Mr. Carlson's "employ[ment] with the C.I.T.Y. Program now called S.P.A.N. for over fifteen years as a counselor")).

Mr. Carlson also argues that CACC has not met its burden because none of the authorities relied upon by it involves a transfer of employment situation comparable to what factually happened here as viewed in the light most favorable to the plaintiff. Under such circumstances, the court determines that material factual disputes exist as to whether all of Mr. Carlson's damages should cut off effective September 30, 2009, and further that CACC has not met its burden of demonstrating an entitlement to partial judgment as a matter of law. Accordingly, the alternative portion of CACC's Rule 56 Motion is also **DENIED**.

**C.    Strike Motion**

Mr. Carlson relies upon testimony from Betty Tidwell ("Ms. Tidwell") in

opposition to CACC's Rule 56 Motion. (Doc. 91-1 "SEALED"). In its Strike Motion, CACC seeks to strike from the record Ms. Tidwell's declaration on the basis that it "contains privileged information which [she] did not have the right to disclose." (Doc. 99 at 1).

CACC also argues that counsel for Ms. Carlson violated Rule 4.2 of the Alabama Rules of Professional Conduct in speaking with Ms. Tidwell and securing her declaration. (Doc. 99 at 8). CACC further maintains that counsel's actions warrant sanctions. (Doc. 99 at 9-11).

CACC finally contends that "the only substantive portions of the Declaration . . . . are contrary to the clear testimony Ms. Tidwell gave in her deposition . . . [and] they are hearsay, hearsay within hearsay, and are not relevant to the inquiry in the summary judgment motion. (Doc. 99 at 11).

In terms of relief, CACC more specifically requests:

> [T]hat the Court strike the Declaration of Betty Tidwell, order Plaintiff's counsel to return the original and destroy all copies, remove it from the court filing system and/or sanction Plaintiff's counsel.

(Doc. 99 at 13). On April 11, 2012, the court placed under seal the declaration of Ms. Tidwell "simply as a precautionary measure." (Doc. 100 at 2).

### A. Ms. Tidwell's Declaration and Attorney-Client Privilege

CACC contends that the attorney-client privilege applies to communications

with Ms. Tidwell from when she met with its lawyers in preparation for her deposition as a managerial employee. (Doc. 99 at 5). CACC further urges that "since a corporate employee cannot waive the corporation's privilege, that same individual as an ex-employee cannot do so." (Doc. 99 at 7) (quoting *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996)).

As a preliminary matter, the court questions CACC's standing to even assert attorney-client privilege with respect to communications made by its counsel during the course of preparing Ms. Tidwell for her deposition. In particular, based upon the above analysis relating to CACC's Rule 56 Motion, when Ms. Tidwell prepared for and then sat for her deposition on April 8, 2011, she was no longer an employee of CACC. Instead, she was an employee of the Alabama Department of Youth Services ("ADYS") effective October 1, 2009, as were all other transferred employees, including Mr. Carlson. (*See* Doc. 60-14 at 11 (Ms. Tidwell's indicating during her deposition that she is currently employed by SPAN, *i.e.*, an ADYS program)).

Therefore, the party with any arguable standing to assert an attorney-client privilege with respect to the deposition preparation communications is ADYS. However, ADYS is no longer a defendant in this litigation, having been dismissed on August 2, 2011 (Doc. 73), and only CACC remains in Mr. Carlson's lawsuit.

However, even assuming without deciding that CACC has standing to assert

9

that the attorney-client privilege applies with respect to the communications that Ms. Tidwell had with any lawyers when she was getting ready for her deposition, CACC has offered no binding authority which confirms that such a privilege would still apply when that employee no longer works for either employer. Instead, CACC cites to some non-binding Ninth Circuit authority (without analyzing the opinion in any manner, much less explaining why this court should adopt it in the absence of any on-point controlling decisional case law) and then asserts that "Ms. Tidwell did not have the authority to waive the privilege and her disclosure of alleged attorney-client communications remained privileged despite here inappropriate disclosure to Plaintiff's counsel." (Doc. 99 at 7).

Further, in presenting this position, CACC points to no authority in which testimony secured from a former purportedly managerial employee was subsequently struck by a court because the evidence arguably violated the attorney-client privilege of that former employer. As the United States District Court for the Southern District of Alabama has observed:

> "Judges are not like pigs, hunting for truffles buried in briefs." *Smith v. Secretary, Department of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009). An issue must be "fairly presented" in order to trigger consideration, and a glancing reference without discussion or legal authority does not meet that standard. *Id.* As the Court has previously noted, (Doc. 110 at 2), "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the

materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

*Amazing Grace Bed & Breakfast v. Blackmun*, No. 09-0298-WS-N, 2011 WL 606126, at *3 (S.D. Ala. Feb. 11, 2011). Therefore, akin to *Amazing Grace*, because CACC, as the movant and the party with the burden to show a violation of the attorney-client privilege, has not "fairly presented" its position that striking Ms. Tidwell's declaration on the basis of any purported compromise of that privilege is appropriate, the court rejects that portion of the Strike Motion.

    **B.**    **Rule 4.2 of the Alabama Rules of Professional Conduct**

CACC also seeks to strike Ms. Tidwell's declaration pursuant to Rule 4.2 of the Alabama Rules of Professional Conduct. Counsel for Mr. Carlson responds that Rule 4.2 of the Alabama Rules of Professional Conduct is inapplicable because Ms. Tidwell already had been fired by the time she contacted him with the information that is included in her declaration executed on March 22, 2012. (Doc. 91-1 "SEALED").

Rule 4.2 governs communications with a person represented by counsel and expressly states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

11

Ala. R. Prof. Conduct 4.2.

> The Comment to Rule 4.2 provides:
>
> This Rule does not prohibit communication with a party, or an employee or agent of a party, concerning matters outside the representation. For example, the existence of a controversy between a government agency and a private party, or between two organizations, does not prohibit a lawyer for either from communicating with nonlawyer representatives of the other regarding a separate matter. Also, parties to a matter may communicate directly with each other and a lawyer having independent justification for communicating with the other party is permitted to do so. Communications authorized by law include, for example, the right of a party to a controversy with a government agency to speak with government officials about the matter.
>
> <u>In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil</u> or criminal <u>liability or whose statement may constitute an admission on the part of the organization</u>. If an agent or employee of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(d).
>
> This rule also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question.

Comment to Ala. R. Prof. Conduct 4.2 (emphasis added). Thus neither Rule 4.2 nor its comment directly address contacts made with former employees.

In support of its position, CACC relies primarily upon Opinion 1993-05 of the

Office of General Counsel, attached as Exhibit E (Doc. 99-5) to its Strike Motion. The court is not persuaded to strike on the grounds of this cited authority which states in full context:

> As the Commission stated in RO-92-12, ". . . . there is a strong argument that Rule 4.2 does not even apply to former employees at any level." The one qualification might be, as discussed in Hazard and Hodes in the treatise The Law of Lawyering, those employees who occupied a managerial level position and were involved in the underlying transaction and being privy to privileged information, including a work product, which would prohibit plaintiff's counsel from accessing said information without a valid waiver by the organization and/or discovery and evidence rules. However, such an exception would be restricted to situations wherein these facts exists.

(Doc. 99-5 at 2-3 (emphasis added)).

First, the Opinion 1993-05 expressly acknowledges that Rule 4.2 may not apply to any former employees at all. Second, to the extent that Rule 4.2 does apply to former employees, CACC has not demonstrated how Ms. Tidwell's managerial status was tied to the decision to pass Mr. Carlson over for a promotion (*i.e.*, the underlying transaction) or otherwise shown how this situation fits into the "one qualification" under Rule 4.2.

Third, even if counsel for Mr. Carlson, did somehow violate Rule 4.2 when Ms. Tidwell contacted him after she was fired, CACC has failed to convince this court that it would be appropriate for it to strike from the record Ms. Tidwell's declaration

on the basis of this alleged ethical violation, especially when the permissible reach of the applicable rule of conduct is highly contested. In particular, none of the case authorities cited by CACC involves decisions in which evidence adduced from a former employee witness was struck from the record due to a violation of Rule 4.2. *Cf. Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court). Therefore, the court rejects the Rule 4.2 part of the Strike Motion.

### C.   Sanctions Section

Additionally, CACC contends that opposing counsel's actions warrant sanctions. (Doc. 99 at 9-11). Several of the cases that CACC cite to involve a party's engaging in an act of bad faith or taking a frivolous position. (Doc. 99 at 9). Another decision, *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1331 (11th Cir. 2002) (Doc. 99 at 10), upheld the imposition of sanctions against the plaintiff's counsel stemming from the inclusion of offensive remarks included in several documents filed in the district court. The last cited case, *Eagle Hospital Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1302-03 (11th Cir. 2009) (Doc. 99 at

10), affirmed imposing sanctions in the form of striking an answer and counterclaims due to a defendant's interception of privileged communications and a refusal to reveal to what extent other confidential information had been obtained.

However, missing from this section are any legal authorities which confirm that Mr. Carlson's counsel's actions under the circumstances presented here constitute bad faith or frivolity. At best, CACC has demonstrated that it and Mr. Carlson's lawyer strongly disagree about the scope of Rule 4.2 and the extent of the attorney-client privilege's application to former employees. Moreover, because neither of these issues are clearly decided as a matter of Eleventh Circuit law, the court is even less inclined to sanction counsel for a purported violation of either one. Thus, the court, *a fortiori*, rejects the sanctions section of the Strike Motion.

### D.     Substantive Portions of Ms. Tidwell's Declaration

CACC finally suggests that paragraphs 3 and 4 of Ms. Tidwell's declaration relating to Mr. Carlson's being passed over for interim program coordinator due to his health as expressed to her by Carol Dotson ("Ms. Dotson") should be struck because they are contrary to Ms. Tidwell's deposition testimony and constitute hearsay. These challenged paragraphs provide:

> 3.     In Clanton, at the program where I work, I personally heard Carol Dotson say that they did not give the interim program coordinator to John Carlson because of his health. She said John was qualified for the

position, but because of his health we are going to put Shon in the position.

4.      I told Carol, I felt sure ya'll would put John in that position. Carol said, John is the most qualified, but because of his health issues going on right now we don't feel it would be good to put him in that position.

(Doc. 96-1 ¶¶ 3-4).

Because the court finds that there is more than sufficient evidence in the record to deny CACC's Rule 56 Motion even when disregarding the substantive statements contained in Ms. Tidwell's declaration, the court does not need to reach the merits of CACC's positions in this last part, and that particular portion of the Strike Motion is **DENIED** as **MOOT**.

### IV.   Conclusion

Consistent with the above analysis, the Rule 56 Motion and Strike Motion are both **DENIED**. By separate order, the court will set the case for a final pretrial conference.

**DONE** and **ORDERED** this the 21st day of May, 2012.

                                                                  _____
                                                                  **VIRGINIA EMERSON HOPKINS**
                                                                  United States District Judge